IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUSAN DAVIS**,<br><br>        Plaintiff,<br><br>    v.<br><br>**STATE OF OREGON**, *Department of Health and Human Services*, and **KOREN BROOKS**, *in her individual capacity*,<br><br>        Defendants. | Case No. 3:12-cv-00635-SI<br><br>**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART FINDINGS AND RECOMMENDATION** |

Beth Ann Creighton and Michael E. Rose, CREIGHTON & ROSE, P.C., 500 Yamhill Plaza Building, 815 S.W. Second Avenue, Portland, OR 97204. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Attorney General, Andrew D. Campbell and Tracy J. White, Senior Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street N.E., Salem OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      United States Magistrate Judge Dennis J. Hubel issued Findings and Recommendation in this case on April 22, 2014. Dkt. 63. Judge Hubel recommended that the Motion for Summary Judgment (Dkt. 44) filed by Defendants State of Oregon and Koren Brooks (collectively "Defendants") be granted in part and denied in part. Specifically, Judge Hubel recommended granting Defendants' motion regarding the intentional infliction of emotional distress ("IIED") claim against Defendant Koren Brooks and the claim under 42 U.S.C. § 1983 filed by Plaintiff Susan Davis ("Plaintiff" or "Davis"). Judge Hubel recommended denying Defendants' motion

PAGE 1 – OPINION AND ORDER

regarding Davis's IIED claim against Defendant State of Oregon and Davis's claim under the Family Medical Leave Act ("FMLA"). For the reasons that follow, the Court adopts in part and rejects in part the Findings and Recommendation.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendation, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendation to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report[.]"); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendation for "clear error on the face of the record."

## DISCUSSION

Plaintiff and Defendants timely filed objections to Judge Hubel's Findings and Recommendation (Dkts. 77, 76), to which each side responded (Dkts. 78, 79). Plaintiff objects to Judge Hubel's recommendation that the Court grant Defendants' motion for summary judgment

PAGE 2 – OPINION AND ORDER

on Plaintiff's claim under 42 U.S.C. § 1983. Defendants object to Judge Hubel's recommendation that the Court deny Defendants' motion for summary judgment on Plaintiff's claims against Defendant State of Oregon alleging IIED and violation of the FMLA. The Court has reviewed *de novo* Judge Hubel's Findings and Recommendation, as well as the briefing submitted by the parties. The Court adopts Judge Hubel's recommendation regarding Plaintiff's claims against Defendant State of Oregon alleging IIED and violation of the FMLA. The Court rejects in part Judge Hubel's recommendation regarding Plaintiff's claim alleging violation of her substantive due process rights brought pursuant to 42 U.S.C. § 1983.

**A.  Background**

The facts of this case are set out in Judge Hubel's Findings and Recommendation. *See* Dkt. 63 at 2-14. Briefly, this case involves claims brought by Davis against Defendants State of Oregon and Brooks alleging IIED, violation of the FMLA, and violation of Davis's substantive due process rights under the Fourteenth Amendment. Defendant State of Oregon hired Davis in 2007 as a Habilitative Therapy Technician ("HTT") to assist medically fragile individuals with their activities of daily living. Augsburger Decl., Dkt. 46 at 1. In approximately 2009, the facility where Davis worked (the Madison House) transitioned to serving persons that "suffer from mental health conditions that cause them to act out in violent and aggressive behaviors such that they are considered to be a danger to themselves and others on a daily basis." *Id.* at 1-2. "Caregivers working in the new Madison House had to be classified as Mental Health Therapy Technicians ("MHTT")." *Id.* at 2. Davis's employer gave Davis the option of moving to another home that served medically fragile individuals and retaining her HTT position or staying at the Madison House and training for and accepting a promotion to be a MHTT. *Id.*

Davis accepted the promotion to MHTT on February 6, 2010, although Madison House's new clientele arrived as early as December 2009. *See* Lippold Decl. Davis Dep., Dkt. 48 at 11,

PAGE 3 – OPINION AND ORDER

91:14-24; Creighton Decl. Ex. 17, Dkt. 49-17 at 2; Second Augsburger Decl. Ex. A, Dkt. 56 at 1-20. Davis worked with the new clientele for at least a month before her reclassification. Second Augsburger Decl. Ex. A, Dkt. 56 at 1-20; Creighton Decl. Ex. 17, Dkt. 49-17 at 2. Davis was assigned to work with an individual, S.B., who Davis alleges targeted her and eventually brutally attacked her on July 19, 2010. Davis Decl., Dkt. 51 at 1-4.

After the attack on July 19, 2010, Davis went to an emergency room for treatment of contusions and an apparent broken nose. Dkt. 63 at 10. Defendant State of Oregon approved Davis for FMLA leave beginning July 19, 2010, and Davis requested that she never again be assigned to work with S.B. in the future. *Id.* at 11. Davis returned from her first period of FMLA leave on September 6, 2010. *Id.* As Davis's supervisor, Brooks "was directed to not assign her to work with S.B. while she settled back into her position." *Id.* Approximately a week after returning from FMLA leave, Davis suffered a major anxiety attack and left work. *Id.* Davis took a second period of FMLA leave through October 11, 2010. *Id.*; Creighton Decl. Ex. 21, Dkt. 49-21 at 1. Davis contends that when she returned to work on October 16, 2010 she was to work at "the opposite side of the house from S.B." and "understood [Davis] would not be reassigned to work in close proximity to S.B." Davis Decl., Dkt. 51, ¶ 16. Davis also contends that "[f]our days later, without advance warning, [she] was told 10 minutes before [her] shift began that [she] was to work with S.B." *Id.* ¶ 17.

Brooks informed Davis that she would be required to follow staffing assignments at the Madison House, including assignments to work with S.B. *Id.* ¶ 20. Davis requested a transfer because she feared working with S.B. *Id.* ¶ 21. The State provided Davis with three options in response to the transfer request: (1) remain at the Madison House and work with S.B. periodically; (2) retain her MHTT status by working at a facility that served the same type of

PAGE 4 – OPINION AND ORDER

clientele as were in the Madison House; or (3) be demoted without a decrease in pay and work as an HTT at another facility named the Hawthorne House located next to the Madison House. Dkt. 63 at 13. Davis chose the demotion the job at the Hawthorne House, despite her preference to stay at the Madison House without having to work with S.B. Dkt. 63 at 14.

Effective November 18, 2010, Davis was officially demoted to the HTT position, and she began work as "'extra' staff at [the] Hawthorne [House]." Creighton Decl., Dkt. 49-20 at 1. Davis later was transferred from the Hawthorne House to the Eliot House, another care facility managed by the State of Oregon, because her employer indicated "they were going to be transitioning or doing some changes to the house." Lippold Decl. Davis Dep., Dkt. 48 at 35, 150:16-151:14. Davis verbally tendered her resignation on February 29, 2012. *Id.* at 36, 166:10. Also on February 29, 2012, Davis filed her lawsuit in Multnomah County Circuit Court. Defendants removed the action to federal court. Defendants filed their motion for summary judgment on November 14, 2013.

## B.  IIED Claim

Defendants challenge Judge Hubel's recommendation to deny Defendants' motion for summary judgment on Davis's IIED claim against Defendant State of Oregon.[1] Defendants argue that the State of Oregon offered Davis the same position she had prior to taking leave under the FMLA or a transfer to a different position with the same pay. Defendants do not address the record evidence, summarized in seven points, cited by Judge Hubel that supports Davis's claim. Dkt. 63 at 18-19.

---

[1] Davis does not object to the recommendation to grant Defendants' motion with regard to the IIED claim against Defendant Brooks. Pl.'s Objections, Dkt. 77 at 2. The Court has reviewed this portion of Judge Hubel's Findings and Recommendation *de novo* and agrees with Judge Hubel's analysis and conclusion. In addition, the State concedes that it has waived its Eleventh Amendment immunity against being sued in federal court.

The Court agrees with Judge Hubel's reasoning and conclusion that there is a genuine dispute of material fact on Davis's IIED claim against Defendant State of Oregon. The evidence identified by Judge Hubel goes beyond the issue of whether the State offered Davis the "same job" and considers the State's knowledge of Davis's ability to care for S.B., the dangers that Davis faced, and the State's actions towards Davis before and after Davis was attacked by S.B. on July 19, 2010. Dkt. 63 at 18-19. Although Defendants argue that Defendant State of Oregon's treatment of Davis was not an "extraordinary transgression of the bounds of socially tolerable conduct," *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (quoting *Sheets v. Knight*, 308 Or. 220, 246 (1989)), Judge Hubel's finding that a reasonable jury could come to the opposite conclusion is supported by the record evidence. *See* Dkt. 63 at 20-21 (explaining that Davis's assignment to work with S.B. despite S.B.'s size, Defendant State of Oregon's ability to increasing staffing with S.B., and Davis's assignment to S.B. after an alleged agreement that Davis would not receive future assignments with S.B.). Thus, it is "for the jury, subject to the control of the court, to determine, whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *House v. Hicks*, 218 Or. App. 348, 358 (2008).

## C.  FMLA Claim

Defendants argue that Judge Hubel erroneously recommended denying Defendants' motion for summary judgment on Davis's interference claim under the FMLA, 29 U.S.C. § 2615(a)(1). Defendants argue that none of the actions cited by Judge Hubel amount to an adverse action necessary to state a claim under the FMLA. Defendants assert that Davis experienced no change in her work schedule and, therefore, there is no basis for an FMLA interference claim.

Davis provided evidence that after the assault on July 19, 2010, she "requested again not to be assigned to S.B." Davis Decl., Dkt. 51, ¶ 14. When Davis returned from her second FMLA leave in October 2010, she understood she "would not be reassigned to working in close proximity to S.B., which [wa]s one of the reasons [Davis] agreed to return to the Madison House." *Id.* ¶ 16. Davis's supervisor Brooks also explained that when Davis "returned to work after her [first] leave, [Brooks] was directed to not assign [Davis] to work with S.B. while [Davis] settled back into her position." Brooks Decl., Dkt. 47 at 1. Brooks further explained, however, that "[w]ithin a few days . . . [her] superior instructed [her] that Davis had to return to a normal rotation which would include periodic assignments to work with S.B." *Id.* at 1-2.

There is a genuine dispute of material fact as to whether Davis experienced an adverse employment action. If the factfinder determines that Davis had a scheduling agreement with Defendants *before* Davis's second FMLA leave that was altered upon her return, Davis may have a claim under the FMLA. Dkt. 63 at 25-26. On the other hand, if Defendants are correct that Davis's work schedule was never actually altered, Defendants may prevail at trial. Moreover, Davis can also argue she experienced a lateral transfer as the result of taking FMLA leave. *Id.* at 26. These disputes, which turn on the evaluation of evidence and the credibility of witnesses, are reserved for the jury. As a result, the Court agrees with Judge Hubel's analysis and adopts this portion of his Findings and Recommendation. Dkt. 63 at 21-27.

**D.  Substantive Due Process Claim**

Plaintiff objects to Judge Hubel's recommendation that the Court grant Defendants' motion for summary judgment against Plaintiff's substantive due process claim under the Fourteenth Amendment. Plaintiff's argument is two-fold: (1) Defendant Brooks violated Davis's liberty interest in physical security because Defendant State of Oregon created or enhanced a

danger through its affirmative conduct; and (2) Defendant Brooks violated Davis's liberty interest in a safe work environment.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) . Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation and quotation marks omitted).

### 1. Due Process Liberty Interest in Physical Security

Davis's claim under 42 U.S.C. § 1983 alleges a violation of her substantive due process rights under the Fourteenth Amendments of the U.S. Constitution. Pl.'s Comp., Dkt. 26-1, ¶¶ 29-32. As a general rule "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Supreme Court's reasoning in *DeShaney* was that the Due Process Clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195. The general rule from *DeShaney* "is modified by two exceptions: (1) the 'special relationship' exception; and (2) the danger creation exception." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)).

Under the state-created danger exception, liability may be found only when a state official affirmatively creates a danger that a party would not have faced otherwise. *See Grubbs*,

PAGE 8 – OPINION AND ORDER

974 F.2d at 121. "To prevail under the danger creation exception, a plaintiff must first show that the state action affirmatively places the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Johnson*, 474 F.3d at 639 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (quotation marks omitted).

Judge Hubel recommended granting Defendants' motion for summary judgment on Davis's claim under the state-created danger exception, which was the only exception invoked by Davis. The primary dispute between the parties is whether this case is more analogous to *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), or to *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007). Judge Hubel reasoned that like *Johnson*, where the court found that the defendants took no affirmative action to create a danger, Defendant Brooks did not make the situation faced by Davis any more dangerous than it otherwise would have been.

This case, however, is most fairly characterized as falling between the *Grubbs* and *Johnson* decisions. In *Grubbs*, the court found that the defendants created a danger to which the plaintiff fell victim by staffing the plaintiff, a female employee hired as a nurse, with a coworker who had "an extraordinary history of unrepentant violence against women and girls" and who "was likely to assault a female if left alone with her." 974 F.2d at 121. The court also noted that the defendants knew that the plaintiff would be alone with the dangerous coworker and that the plaintiff would "not be prepared to defend against or take steps to avert an attack." *Id.* Further, it was not disclosed to the plaintiff that she would be left alone with a coworker who was likely to assault women. *Id.*

In contrast, the court in *Johnson* declined to find the defendants liable under the state-created danger exception where protestors in Seattle's Pioneer Square were assaulted during a

PAGE 9 – OPINION AND ORDER

Mardi Gras celebration. 474 F.3d at 635-36. The court reasoned that the plaintiffs failed to offer evidence that the defendants, including a police chief, "engaged in affirmative conduct that enhanced the dangers the Pioneer Square Plaintiffs exposed themselves to by participating in the Mardi Gras celebration." *Id.* at 641. With these two cases serving as a framework, the Court focuses its analysis on two time periods relevant to Davis's claim: (1) Brooks' actions on or before the July 19, 2010 attack; and (2) Brooks' actions after the July 19, 2010 attack when Davis returned from her two FMLA leaves.

Regarding the time period before July 19, 2010, the Court agrees with Judge Hubel's analysis. Davis argues that Brooks took affirmative actions that increased her danger before July 19, 2010. Davis states that up to July 19, 2010, Brooks knew that S.B. was targeting Davis yet continued to schedule Davis with S.B., and that this decision created a heightened risk of danger. Pl.'s Objections, Dkt. 77 at 6. Davis also argues that Brooks persisted in assigning Davis to work with S.B. without either assigning a stronger staff member to help control S.B. or increasing the number of staff members working with S.B. or otherwise available to assist Davis. *Id.* Defendants argue that Brooks performed no affirmative conduct and instead made the standard staffing decisions at the Madison House. Moreover, Defendants argue that Davis's job was inherently dangerous and that Davis consented to and had full knowledge of the staffing procedures at the Madison House. Defendants also argue that there was no scheduling decision that Brooks could have made to prevent the July 19, 2010 attack because Davis was not even assigned to work with S.B. on that date.

The Court agrees with Defendants and Judge Hubel's analysis regarding the time period up to July 19, 2010. Davis had knowledge of the risks and dangers at the Madison House and of Brooks' standard staffing decisions up to July 19, 2010. Further, it appears that there was nothing

PAGE 10 – OPINION AND ORDER

that would have indicated to Brooks that the physical incidents between S.B. and Davis during this time period were beyond the ordinary, understood, and disclosed risks. *See* Dkt. 63 at 19 n.6; *see Johnson*, 474 F.3d at 641; *see also Hinkle v. Blackletter*, 2008 WL 1745855, at *5-6 (D. Or. 2008) (rejecting a claim under the state-created danger exception because there was no specific warning of an attack on the plaintiff prison guard and the defendant's response did not "exacerbate" the danger to the plaintiff). Thus, the Court grants Defendants' motion for partial judgment with regard to the incidents up to July 19, 2010.

Regarding Brooks' staffing actions after the July 19, 2010 attack, Davis argues that after her first FMLA leave she was told that she would not be assigned with S.B. but was then reassigned to work with S.B. upon Davis's return. As a result, Davis suffered a major anxiety attack. Upon return from her second FMLA leave, Davis was again assigned to work with S.B., at which time S.B. threatened to break Davis's nose and kill her. Davis Decl., Dkt. 51 at 4. Defendants argue that Brooks merely continued standard scheduling practices at the Madison House. Defendants thus attempt to distinguish Brooks' actions from the *Grubbs* case and argue that unlike *Grubbs*, here Davis had full knowledge of the dangers of her job and could be prepared to handle the dangerous nature of her job. Defs.' Resp., Dkt. 78 at 4.

The Court finds, however, that there is a material dispute of fact regarding whether after July 19, 2010 Brooks made affirmative staffing decisions that exposed Davis to danger. Specifically, Davis argues that after the July 19, 2010 attack it was apparent that S.B. was specifically targeting Davis, and as a result, Davis received explicit guarantees that she would not be assigned to work with S.B. *See* Dkt. 63 at 19 n.6; Davis Decl., Dkt. 51, ¶¶ 16-17. Davis also argues that Brooks' staffing decisions after July 19, 2010 put her at risk and were independent from the general working environment at the Madison House. These decisions,

PAGE 11 – OPINION AND ORDER

Davis argues, go beyond the disclosed nature of the clientele at the Madison House and indicate that Brooks was aware that Davis "would not be prepared to defend against or take steps to avert an attack" because she had been told that she would not be working with S.B. *See Grubbs*, 974 F.2d at 121.

At the motion for summary judgment stage, the Court looks to whether a reasonable trier of fact could find for the non-moving party Davis. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court finds that Davis has presented evidence that requires "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," which are all functions of a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). To the extent the factfinder believes that Brooks assigned Davis to work with S.B. despite explicitly representing to Davis that she would not be staffed with S.B. and knowing that staffing Davis with S.B. placed Davis at a heightened risk, Davis may prevail at trial.

Defendants' motion for summary judgment on this claim is granted only with regard to Brooks' actions on or before the attack that occurred on July 19, 2010, and denied with regard to the actions taken by Brooks after the July 19, 2010 attack.

### 2. Due Process Liberty Interest in a Safe Work Environment

Davis argues that there is an alternative basis to find a due process violation that was not addressed in the Findings and Recommendation but was raised in earlier briefing. *See* Pl.'s Mem. in Op., Dkt. 50 at 24. Davis argues that Or. Rev. Stat. ("O.R.S.") §§ 654.010 and 654.015 prohibit a place of employment that is unsafe or detrimental to health. Because of this, Davis contends that Oregon extended the right to a safe working environment and therefore cannot deprive her of that right.

The Due Process Clause alone does not confer a liberty interest in the right to a safe working environment. *See Collins v. City of Harker Hieghts*, 503 U.S. 115, 126-28 (1992) (the Due Process Clause alone does not guarantee to a voluntarily employed person a certain minimal level of safety and security). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). After a state creates a liberty interest, it cannot take it away without due process. *See Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011). A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural (rather than a substantive) due process violation, which can be vindicated under 42 U.S.C. § 1983. *See Carlo v. City of Chino*, 105 F.3d 493, 497-500 (9th Cir. 1997).

Davis did not plead a cause of action based on Defendants' alleged violation of Davis's procedural due process rights and, instead, alleged that Defendants' "conduct violated [Davis's] Constitutional rights of *Substantive* Due Process under the 14th Amendment of the United States Constitution." Pl.'s Compl., Dkt. 26-1, ¶ 30 (emphasis added). Davis may not allege a new cause of action in response to a summary judgment motion. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (finding that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'") (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (new issues raised in response to summary judgment were not appropriate for consideration). Davis

also failed to file a motion to amend her complaint to add this theory. For these reasons, the Court declines to address Davis's new theory of liability.

## CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. 44) is GRANTED IN PART and DENIED IN PART. The Court ADOPTS the portion of Judge Hubel's Findings and Recommendation (Dkt. 63) granting Defendants' Motion for Summary Judgment on Plaintiff's claim against Defendant Koren Brooks for IIED and denying Defendants' Motion for Summary Judgment on Plaintiff's claims against Defendant State of Oregon for IIED and violation of the FMLA. The Court REJECTS the portion of Judge Hubel's Findings and Recommendation granting Defendants' Motion for Summary Judgment on Plaintiff's 42 U.S.C. § 1983 claim alleging a substantive due process violation based on actions taken after July 19, 2010, but otherwise ADOPTS Judge Hubel's analysis on that claim for actions taken by Defendants up to that date.

**IT IS SO ORDERED**.

DATED this 9th day of June, 2014.

/s/ Michael H. Simon  
Michael H. Simon  
United States District Judge